UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>v.<br><br>John R. Peacock; Beverly J. Peacock, et al.<br><br>          Defendants. | Case No.: 15-cv-2460-AJB-RNB<br><br>**ORDER GRANTING PLAINTIFF'S SUMMARY JUDGMENT MOTION (Doc. No. 38)** |

Before the Court is Plaintiff United States of America's motion for summary judgment. (Doc. No. 38.) The United States seeks to foreclose its federal tax liens against the Peacock's property. Both the Peacocks and the California Franchise Tax Board oppose the motion. (Doc. Nos. 56, 58.) However, the Peacocks' late opposition failed to substantively respond to the U.S.'s arguments. Because the U.S. has valid tax liens against the Andorra property owned by Mr. Peacock, the Court **GRANTS** their summary judgment motion. (Doc. No. 38.)

## I.   BACKGROUND

The United States seeks to collect unpaid tax liabilities for the 1999, 2000, 2001, 2002, 2003, 2004, and 2006 (through foreclosure) tax years. (Doc. No. 38-1 at 6.) After working as a pilot from 1961 to 1999, Mr. Peacock received a pension from United Airlines in 1999 and money from other sources, yet, failed to file federal income tax returns.

(*Id.* at 6–7.) In his defense, Mr. Peacock has argued he is not required to file a tax return because he believes his salary and other funds received are not taxable. (*Id.* at 7.) He believes Title 26 Code is "not positive law," and that the IRS is not enforceable. (*Id.* at 8 (citing Mr. Peacock's dep., Doc. No. 38-1, 12:22–23).) Mr. Peacock admitted to not making voluntary tax payments for the tax years in question. (*Id.*) As a result of the assessments, the United States seeks to foreclose on federal tax liens on real property owned by the Peacocks referred to as the Andorra Property. (*Id.* at 9.) The Peacocks hold the Andorra Property in a trust called the Red Earth Alliance. (*Id.* at 10.) After the Peacocks failed to file tax returns in the early 1990's, the IRS sent him letters around 1994 or 1995 "informing him of his tax delinquencies." (*Id.*) Shortly thereafter, the Peacocks "transferred the Andorra Property via a Quitclaim Deed to the Red Earth Alliance on August 22, 1995." (*Id.*) "Mrs. Peacock relinquished her interest in the Andorra Property." (*Id.* at 11.) The U.S. alleges Mr. Peacock did not change how he used the property, and claims he still uses it as a residence. (*Id.*) He also still pays to maintain the residence, including paying expenses and real property taxes. (*Id.*) In addition, Mr. Peacock uses the Red Earth Alliance bank account to pay for the Andorra Property's expenses. (*Id.*) The U.S. alleges the Red Earth Alliance has no "ownership or other controlling interest in the Andorra Property." (*Id.* at 12.) As discussed later, the U.S. believes the Red Earth Alliance is the nominee or alter ego of Mr. Peacock, and that the tax assessments it filed against him should attach to the Andorra Property. (*Id.* at 13.)

## II. LEGAL STANDARDS

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. *Id.*

A party seeking summary judgment bears the initial burden of establishing the

absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. *Id.* at 322–23.

If the moving party carries its initial burden, the burden of production shifts to the nonmoving party to set forth facts showing a genuine issue of a disputed fact remains. *Id.* at 330. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. DISCUSSION

The United States moves for summary judgment asserting it possesses valid tax liens, the liens can attach to Mr. Peacock's Andorra Property, and the United States is entitled to foreclose on the Andorra property. (Doc. No. 38-1 at 8, 17.) For the reasons stated below, the U.S. had met their burden demonstrating the absence of genuine issues of material fact. The Peacock defendants failed to meet the shifting burden as they did not substantively respond to the U.S.'s summary judgment motion. (*See* Doc. No. 56.)

"Under the relevant provisions of the Internal Revenue Code, to satisfy a tax deficiency, the Government may impose a lien on any 'property' or 'rights to property' belonging to the taxpayer." *Drye v. United States*, 528 U.S. 49, 55 (1999). 26 U.S.C. § 6321 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

Here, the U.S.'s liens arose on the assessments and attached to all of Mr. Peacock's interests, including his interest in the Andorra Property.

### A. Mr. Peacock Has Outstanding Tax Liability Assessments

As proof of the tax assessments, the U.S. provided IRS Forms 4340. (Doc. No. 38-1 at 14.) A Form 4340 is "probative evidence in and of itself and, 'in the absence of contrary

3

15-cv-2460-AJB-RNB

evidence, is sufficient to establish that notices and assessments were properly made.'" *Hansen v. United States*, 7 F.3d 137, 138 (9th Cir. 1993) (quoting *Hughes v. United States*, 953 F.2d 531, 535 (9th Cir. 1992)). Forms 4340 are also admissible as self-authenticating documents. *United States v. Scharringhausen*, 226 F.R.D. 406, 411 (S.D. Cal. 2005).

The U.S. provided a Form 4340 for tax year 1999 with a total balance of $216,597.24. (Doc. No. 38-3 at 9.) Tax year 2000 has a total balance of $33,655.56. (*Id.* at 17.) Tax year 2001 shows a balance of $133,995.08. (*Id.* at 23.) Tax year 2002 has a balance of $54,739.82. (*Id.* at 29.) 2003 tax year has a balance of $124,155.71. (*Id.* at 34.) Year 2004 has a balance of $26,943.41. (*Id.* at 39.) Tax year 2006 shows a balance of $25,029.29. (*Id.* at 44.) In sum, the U.S. has shown a total tax liability of $615,116.11.

In the Peacock's response, the Peacocks demand a jury trial and again dispute this Court's jurisdiction over the case. (*See* Doc. No. 58.) This Court has already found jurisdiction is proper. (Doc. No. 47.) Moreover, the U.S. is correct that a demand for a jury trial at this stage is improper as it is more than two years late. (Doc. No. 59 at 3.) Because the Peacocks failed to show any contrary evidence disputing the Forms 4340, the Court finds them valid.

### B. Foreclosure on the Andorra Property

Once assessments are established, a lien may be imposed onto property owned by the person. 26 U.S.C. § 6321. Liens may also be attached to "property titled to that taxpayer's nominees or alter-egos." (Doc. No. 38-1 at 17.) "A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001) (citations omitted). "The federal tax lien statute itself 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law.'" *United States v. Craft*, 535 U.S. 274, 278 (2002) (quoting *United States v. Bess*, 357 U.S. 51, 55 (1958)). "Consequently, in making nominee determinations in a tax lien context, we must 'look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach[.]'" *Fourth Inv. LP v. United States*, 720 F.3d 1058, 1067 (9th Cir. 2013) (citing *Drye*, 528 U.S. at 58). Thus, the Court must conduct

4

15-cv-2460-AJB-RNB

a two-step inquiry, first determining whether the taxpayer has a property interest under state law, then determining under federal law if those rights qualify as property or rights to property under the federal tax lien scheme. *Drye*, 528 U.S. at 58.

First, the U.S. asserts the Andorra Property is owned by the Peacocks under California state law, even though the property is currently held in the Red Earth Alliance trust. (Doc. No. 38-1 at 10.) This is known as nominee status, when the taxpayer retains an interest in a property although a third party, the nominee, holds title. There is a six-factor test to determine nominee status:

> (1) whether inadequate or no consideration was paid by the nominees;
> (2) whether the properties were placed in the nominees' names in anticipation of a lawsuit or other liability while the transferor remains in control of the property;
> (3) whether there is a close relationship between the nominees and the transferor;
> (4) failure to record the conveyances;
> (5) whether the transferor retained possession; and
> (6) whether the transferor continues to enjoy the benefits of the transferred property.

*Spotts v. United States*, 429 F.3d 248, 253 n. 2 (6th Cir. 2005).

Here, first, the Red Earth Alliance did not give consideration for the deed's transfer. (Doc. No. 38-1 at 10–11; Mr. Peacock Dep., Doc. No. 38-2 at 45, lines 21–24; Quitclaim Deed, Doc. No. 38-2 at 61.) Second, the U.S. shows the IRS notified Mr. Peacock in 1994 and 1995 that he was being audited for tax return year 1992. (*Id.*) The Peacocks then transferred the Andorra Property to the Red Earth Alliance via a Quitclaim deed on August 22, 1995, presumably in anticipation of the IRS imposing liabilities over it. (*Id.*; Quitclaim Deed, Doc. No. 38-2 at 61.) Third, there is a close relationship because "Mr. Peacock helped create the Red Earth Alliance" and also has "control over assets of the Red Earth Alliance. . . ." (Doc. No. 38-1 at 19.) Regarding factors five and six, after the transfer, Mr. Peacock continued to use the Andorra Property as his residence, showing he both retained possession of the Property and continues to enjoy its benefits. (Doc. No. 38-1 at 11; Mr. Peacock Dep., Doc. No. 38-2 at 27, lines 10–15.) He also pays expenses for the

Property. (Doc. No. 38-1 at 11.) Although the conveyance was recorded, factor four, "[v]irtually without exception, courts focus on the totality of the circumstances," and no single factor is dispositive. *Dalton v. C.I.R.*, 682 F.3d 149, 158 (1st Cir. 2012). Rather, the overarching consideration is "whether the taxpayer exercised active or substantial control over the property." *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999).

The Court finds that the totality of the circumstances indicates the Red Earth Alliance is the nominee or alter ego of Mr. Peacock as of August 23, 1995—the date of the deed. (Doc. No. 38-2 at 61.) As stated in a similar case, "[n]early every factor supports the existence of a nominee relationship." *Fourth Inv. LP*, 720 F.3d at 1070. Consequently, the Andorra Property, as well as all other properties owned by Mr. Peacock or the Red Earth Alliance, is subject to the federal liens against Mr. Peacock.

### C. California Franchise Tax Board's Competing Liens

The U.S. argues its notices of tax liens have priority over California Franchise Tax Board's liens. (Doc. No. 38-1 at 21.) The FTB opposes the summary judgment motion, arguing: (1) the complaint fails to seek a claim for relief against the FTB; (2) their tax claim is entitled to full payment; and (3) state law applies. (Doc. No. 56.)

As to FTB's first argument, the U.S. brought a claim against the FTB under 26 U.S.C. § 7403(b). (Doc. No. 1 ¶ 14.) This section states "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." 26 U.S.C. § 7403(b). Thus, the Court finds the U.S. adequately states a claim for relief against the FTB.

As to FTB's second argument, FTB asserts its liabilities were assessed before the federal ones. (Doc. No. 56 at 2.) The FTB issued the following notices of state tax lien against Mr. Peacock:

- November 8, 2005: $46,942.13 for tax years 1999 and 2003, (Doc. No. 38-3 at 59);
- November 15, 2007: $14,652.55 for tax years 2001, 2002, 2004, and 2005, (*Id.* at 60);

- October 4, 2011: $6,844.82 for tax years 2006, 2007, 2008, and 2009, (*Id.* at 61);
- January 14, 2013: $3,230.03 for tax year 2010, (*Id.* at 62);
- October 1, 2013: $3,145.73 for tax year 2011, (*Id.* at 63); and
- March 26, 2014: $33,201.07 for tax year 2001, (*Id.* at 64).

The U.S. argues these liens are "inchoate" because "they do not name the Red Earth Alliance or describe the property subject to the lien." (Doc. No. 60 at 5.) For a state lien to defeat a federal one, it must be perfected or choate. A lien is perfected or choate if it (1) identifies the lienor, (2) the property subject to the lien, and (3) the amount of the lien. *United States v. City of New Britian*, 347 U.S. 81, 84 (1954). Here, while the notices do list the Andorra Property, they only do so in reference to Mr. Peacock's "last known address," but do not state the Andorra Property as the actual subject of the lien. (*See* Doc. No. 38-3 at 59–64.) The notices, however, do state that "[s]aid lien attaches to all property and rights to such property now owned or later acquired by the taxpayer." (*See* Doc. No. 38-3 at 59.) However, they do not reference the Red Earth Alliance as the lienor.

In a nearly identical case from the Eastern District of Texas, the court was presented with determining whether a state judgment lien or federal liens had priority. *United States v. Ultra Dimensions*, 803 F. Supp. 2d 596, 597–98 (E.D. Tex. July 20, 2011). Mr. and Mrs. Neal purchased the Subject Property and transferred it into Ultra Dimensions—"a sham trust"—which was the nominee of the Neals. *Id.* at 597. Goolsby obtained a judgment lien against the Neals, however, it did not mention Ultra Dimensions. *Id.* at 597–98. The United States later "filed Notices of Federal Tax Liens against Ultra Dimensions as nominee for the Neals." *Id.* at 598. The U.S. filed suit to determine lien priority. The Court found that because Goolsby's abstract of judgment only mentioned Mr. Neal and did not reference Ultra Dimensions or the Subject Property, it was not choate until after the court's order voiding the transfers to Ultra Dimensions, and "finding that Ultra Dimensions is the alter ego of the Neals." *Id.* at 600–01. Because settled law states that a federal lien becomes perfected once the U.S. files suit, the U.S. had perfected its lien when the case was filed. *Id.* at 600 ("[T]he date of perfection of a federal tax lien is the date the notice of the lien is

filed."). Thus, the court held that the U.S. had perfected its lien first, and thus had priority. *Id.* at 602.

Similarly, here, the FTB notices fail because they do not include both the specific property the lien was attached to, the Andorra Property, and they do not list the Red Earth Alliance on its liens, which held the Property. The FTB's assertion of "the first in time is the first in right" principle is inapplicable because the FTB's liens did not become choate—at least partially—until this order found that the Red Earth Alliance was a nominee of the Peacocks. (Doc. No. 56 at 2 (citing *U.S. By and Through I.R.S. v. McDermott*, 507 U.S. 447, 449 (1993)).) Accordingly, the U.S.'s federal tax liens were perfected before the FTB's and has priority.

## IV. MOTION FOR RECONSIDERATION

The Peacocks request the Court allow them to file objections and a motion to reconsider its previous ruling regarding the Court's jurisdiction over this case. (Doc. No. 63.) The Peacocks state the Court rejected the document because the motion was missing the time and date for a motion hearing. (*Id.* at 2.) However, the document the Peacocks filed, and the Court rejected, was a duplicative motion arguing the Court lacked subject-matter jurisdiction over the case. (Doc. No. 65.) Because the Court already ruled on the Court's jurisdiction, (Doc. No. 47), and because the Peacocks' rejected motion repeats similarly misguided arguments as the initial motion, the Court **DENIES** reconsidering its decision to reject the duplicative motion. (Doc. No. 63.)

## V. CONCLUSION

The Court **GRANTS** the United States' summary judgment motion. (Doc. No. 38.) The Court finds that Mr. Peacock is indebted to the U.S. for a total of $562,242.84[1] as of January 16, 2018, less any payments made or credits applied, plus any interest added. Additionally, the Court finds the Red Earth Alliance is a nominee of Mr. Peacock and that

---

[1] Although this amount is different than what the Court calculated *supra* p. 3, the Court will award only what the United States specifically requested.

8

the U.S. possesses valid federal tax liens against Mr. Peacock's property and rights to property, including the Andorra Property. Finally, the Court finds that the U.S.'s federal liens have priority over the California Franchise Tax Board's liens.

The Court also **DENIES** the Peacock's motion to reconsider its rejection of a motion the Peacock's filed challenging the Court's jurisdiction. (Doc. No. 63.)

**IT IS SO ORDERED.**

Dated: September 18, 2018

Hon. Anthony J. Battaglia
United States District Judge